IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION No. 10-769 |
| | : | |
| v. | : | CIVIL ACTION No. 15-5143 |
| | : | |
| ABDUR RAZZAK TAI, M.D. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.** **September 26, 2018**

Defendant Abdur Razzak Tai, M.D. seeks relief pursuant to 28 U.S.C. § 2255 from his convictions for mail and wire fraud, asserting his trial counsel was constitutionally ineffective for failing to ensure that Dr. Tai, who suffers from a hearing impairment, was able to understand, participate in, and assist in his defense during trial. Following an evidentiary hearing, upon consideration of the record in this case, and for the reasons set forth below, Tai's § 2255 motion will be denied.

**BACKGROUND**

In November 2010, Dr. Tai, a board-certified cardiologist then in private practice in Florida, was charged by indictment with multiple counts of mail and wire fraud arising from work he performed on behalf of attorneys representing claimants seeking payment from the settlement fund in litigation regarding the prescription diet drug known as Fen-Phen. The attorneys hired Tai to read the claimants' echocardiograms and complete paperwork certifying whether the claimants had heart conditions qualifying them for compensation from the Fen-Phen settlement fund. The Indictment charged Tai with engaging in a scheme to defraud the settlement fund and the drug manufacturer that funded the settlement by submitting echocardiogram reports and other forms falsely representing (1) his conclusions were the result of his own observations and medical judgment when, in fact, he had not actually reviewed the

claimants' echocardiograms but had delegated that task to an echocardiogram technician in his office, and (2) the claimant had the requisite level of valvular heart disease to qualify for payment under the settlement when he either knew the claimant did not qualify or did not actually know whether the claimant qualified.

Tai proceeded to trial in September 2012, represented by Victor Martinez, Esquire. At the time of trial, Tai was 78 years old and wore hearing aids without which he could not hear.[1] *See* Hr'g Tr. 10-11, Apr. 26, 2017. On the first day of trial, after jury selection and opening arguments, Tai's counsel alerted the Court, outside the presence of the jury, that Tai was having difficulty with his hearing aids. Defense counsel stated that earlier in the day, the hearing aids started to make an audible beeping sound, and Tai told counsel he had been unable to hear a substantial part of counsel's opening statement. Trial Tr. 44, Sept. 10, 2012. Counsel requested that the Court recess before any witnesses were called so that Tai could have his hearing aids repaired or purchase new ones, stating "the reality is that he's not hearing but half of it, or maybe not even half of it." *Id.* at 44-45. The Government agreed a recess was warranted given that there was "an issue . . . with the defendant participating." *Id.* at 45. And although Tai proposed that he be given ten minutes to call his audiologist and try to fix the problem, the Court determined the better course was to break for the day and allow Tai to address the problem so it would not recur:

> I don't want to go through this again, so if you need to get one, you know, I'm willing to break right now. It's 3:30. You get one so that we don't have this problem again. That's probably the best thing to do, rather than fix it and having this problem repeat.

---

[1] Although Tai's hearing device is sometimes referred to as a "hearing aid" and sometimes referred to as "hearing aids," in the affidavit submitted with his reply brief, Tai states that at the time of trial, he used hearing aids in both ears. Tai Aff. ¶ 5. The Court therefore uses the plural "hearing aids" throughout.

*Id.* at 45-46. Defense counsel pledged to "make sure [Tai] gets there [i.e., into a shop] and gets [his hearing aids] fixed or buys [new ones] so that he can hear," and the Court granted counsel's request to recess, stating:

> [T]hat's fine. I think that – I don't want to compromise his ability to participate in this trial, so we'll break right now.
>
> But, Attorney Martinez, he has to get into a shop and get this problem fixed, and whatever he missed, you could order the DVD, and at least he could listen to it if you have any – any issue, problems.

*Id.* at 46.

The next day, trial resumed as scheduled. Before the start of the proceedings, defense counsel advised the Court the issue with Tai's hearing aids had been addressed.[2]

No further issues regarding Tai's hearing were raised with the Court until September 13, 2012, the fourth day of trial, when defense counsel interjected during the Government's direct examination of a witness to request that the Court direct the witness to speak into the microphone because Tai was having trouble hearing him. *See* Trial Tr. 74, Sept. 13, 2012. In response to counsel's request, the Government directed the witness to pull the microphone closer to himself, *see id.*, and when the witness subsequently moved off of the witness stand to explain a summary chart produced by the Government, the Government again requested that the witness's microphone be adjusted to ensure Tai could hear, *see id.* at 83-84.

---

[2] Although there was no on-the-record discussion of the issue with Tai's hearing aids, both Tai and his counsel recall that counsel conveyed to the Court that the problem had been taken care of. In the affidavit submitted in support of his § 2255 motion, Tai stated he "recall[ed] the judge asking my lawyer, 'Has it been taken care of?' and my lawyer answered, 'Yes.'" Tai Aff. ¶ 10. Similarly, at the evidentiary hearing on Tai's § 2255 motion, Martinez testified, "I'm fairly certain that I advised the Court, either, directly or indirectly of the fact that the hearing-aid issue had been addressed," though "it may have been an off-the record discussion with the Court." Hr'g Tr. 64, Apr. 26, 2017; *see also id.* at 79-80. The Court's recollection is consistent with that of the parties.

Later the same day, Tai testified in his own defense. Defense counsel prefaced his questioning of Tai by asking him "to promise me that if you don't hear me you'll say so," and that "if you don't understand the question you'll ask me to repeat it." *Id.* at 146. Tai stated he would do so and would do the same when questioned by the Government. *Id.* Throughout his testimony, Tai answered the questions posed by defense counsel and by the Government without any apparent difficulty hearing or understanding. In a few instances, Tai asked that a question be repeated. But each time, once the question was repeated, he answered it.[3] When asked on cross-examination about the testimony of other witnesses, Tai acknowledged the witnesses' testimony, giving no indication he had not heard it. *See id.* at 165 (acknowledging Reba Pearson's testimony that she and Tai were in a romantic relationship); *id.* at 192 (agreeing Scott Verhine testified that he first started working with Tai in August 2001, and acknowledging Debbie Patrick's testimony regarding documents with handwritten notes).

On September 14, 2012, the case went to the jury, which returned a guilty verdict on all counts. Following a sentencing hearing on March 26, 2013, the Court sentenced Tai to 72 months of imprisonment, a sentence below the advisory sentencing range of 87-108 months under the Federal Sentencing Guidelines.[4]

---

[3] *See* Trial Tr. 150, Sept. 13, 2012 ("Q Okay. And Tom Haverty is, or is not a lawyer? A I'm sorry? Q Is Tom Haverty a lawyer? A No, Tom Haverty was, we called bird dog, that is the kind of middleman brings in the clients . . . ."); *id.* at 177 (Q So you were here for the testimony of Bruce DelValle, right? A I'm sorry, testimony of? Q Bruce DelValle, your lawyer. A Yes, I was here.").

[4] At sentencing, defense counsel submitted a report and presented testimony from Maria E. Colon, M.D., a physician in practice with the Veterans Administration in central Florida who reviewed Tai's medical records and conducted a one-time face-to-face interview with him in March 2013, six months after trial, for the purpose of evaluating Tai's ability to withstand a sentence of incarceration. Dr. Colon opined that incarceration would be detrimental to Tai in light of his many active medical problems, early dementia, and depressed state of mind. With respect to Tai's ability to hear, Dr. Colon reported that during her one-on-one visit with Tai, she

Tai thereafter appealed, represented by new counsel, and in April 2014, the Third Circuit Court of Appeals issued an opinion affirming Tai's conviction but vacating his sentence and remanding the case for this Court to address the applicability of an aggravating role enhancement under § 3B1.1(c) of the Sentencing Guidelines. *United States v. Tai*, 750 F.3d 309 (3d Cir. 2014). On remand, the Court determined a two-level aggravating role enhancement was warranted and that Tai thus remained subject to the same advisory Guidelines range of 87-108 months. Upon consideration of the parties' arguments and Tai's own statement during allocution at the resentencing hearing, held on September 10 and 12, 2014, however, the Court sentenced Tai to 66 months of imprisonment, a six-month reduction of his original sentence.

**SECTION 2255 PROCEEDINGS**

In September 2015, Tai filed a pro se motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, raising a number of claims, including claims concerning his alleged inability to hear the testimony against him at trial.[5] The Government filed an opposition in January 2016. In March 2016, the Court granted Tai's renewed request for counsel and appointed the Federal Defender Office to represent him. In February 2017, Tai filed a counseled reply brief, withdrawing all claims except the claim that his trial counsel was ineffective for failing to ensure that Tai's hearing impairment did not prevent him from understanding, participating in, and assisting in his own defense during trial. The reply brief was accompanied by an affidavit from Tai setting forth the details of his hearing difficulties at trial.

---

observed "decreased hearing," Colon Report 4, and she stated her impression was that Tai's hearing aids "did not completely correct the problem," Sentencing Hr'g Tr. 29, Mar. 26, 2013. Notwithstanding his medical problems, including his hearing issues, Tai continued to practice medicine and to see patients up until the time of sentencing.

[5] Tai filed his original pro se § 2255 motion in September 2015. At the Court's request, he refiled the motion using the correct form in October 2015.

The Court held an evidentiary hearing on this ineffective assistance of counsel claim on April 26, 2017, at which Tai and his trial counsel, Attorney Martinez, both testified. Karen Ann Martinez, Martinez's paralegal, who is also married to Martinez, and Brian Louis Pacchioli, an FBI Special Agent who was part of the prosecution team, also testified briefly at the evidentiary hearing.[6]

Tai recounted that after the Court recessed on the first day of trial, he went to the Department of Audiology at Thomas Jefferson University's medical school for a walk-in appointment, accompanied by Reba Pearson, his personal companion and administrative assistant. Hr'g Tr. 12-13, Apr. 26, 2017. During the appointment, a technician looked at his hearing aids and tried to clean them, but recommended that Tai replace the hearing aids when he returned to Florida. *Id.* at 13. According to Tai, although he tried to convince himself that the cleaning made some improvement, it did not fix the problem, and when trial resumed the next day, he was not able to hear. *See id.* Tai maintained he tried to tell Martinez he could not hear, but Martinez became annoyed at the interruption and told Tai "to shut up and just listen to what was going on." *Id.* at 13-14. Tai also recalled Martinez asking him once or twice during trial whether he could hear, and stated that each time he responded he could not hear. *Id.* at 14.

---

[6] Less than a month after the evidentiary hearing, Tai's term of imprisonment was reduced to time served for reasons unrelated to his § 2255 motion. Although Tai was released from prison shortly after the evidentiary hearing, his § 2255 motion is not moot as Tai is currently serving a three-year term of supervised release. *See United States v. Doe*, 810 F.3d 132, 143 (3d Cir. 2015) (holding a § 2255 motion was not moot where the district court could reduce the duration of the movant's supervised release if he prevailed). In addition, while a movant who has been unconditionally released from criminal confinement must typically prove that he or she suffers a continuing injury to maintain the suit, where the movant challenges his or her criminal conviction, the Supreme Court has been willing to presume that the wrongful conviction has collateral consequences sufficient to prevent the case from becoming moot. *See Spencer v. Kemna*, 523 U.S. 1, 7-8 (1998).

Tai acknowledged that while on the witness stand, he was able to understand the lawyers' questions to some extent when they examined him from the podium in the center of the courtroom, but stated he did not understand "quite a bit" of the questioning and could not understand the lawyers when they moved further away. *See id.* at 15-16, 27. He also claimed he "could not understand anything" when he was seated at counsel table. *Id.* at 17.

Martinez testified he became aware Tai was having difficulty hearing on the first day of trial when Tai's hearing aids began periodically emitting an audible beeping noise and when Tai told Martinez he had not been able to hear some 50 percent of what had been said during opening arguments. *Id.* at 57-58. Upon being advised there was a problem with Tai's hearing aids that was preventing him from hearing, Martinez brought the issue to the Court's attention and asked for a recess so the problem could be addressed.[7] *Id.* at 58. When trial resumed the next day, Martinez understood from Pearson, who had accompanied Tai to Jefferson and whom Martinez described as Tai's "constant companion" and "trusted confidante,"[8] that the problem with Tai's hearing aids had been remedied. *Id.* at 61-62. Specifically, Martinez testified Pearson advised him the beeping noise signaled that the battery in the hearing aids was dying, a technician had addressed the problem by installing a new battery and cleaning the hearing aids, and Tai's hearing aids were again functioning. *See id.* at 61, 77, 80. Consistent with Pearson's explanation, after Tai's visit to Jefferson, the beeping noise did not recur. *Id.* at 77.

---

[7] Martinez explained that, at the time of the trial, he believed that in the event Tai's hearing aids could not be fixed, Tai could simply purchase new hearing aids. Hr'g Tr. 59, Apr. 26, 2017. He did not understand that new hearing aids would have to be customized. *Id.*

[8] Martinez explained that throughout his representation of Tai, which began in 2006, six years before trial, Pearson was present for virtually all of his meetings with Tai, at Tai's request. Hr'g Tr. 61-62, Apr. 26, 2017.

Believing the problem with Tai's hearing aids had been corrected, when trial resumed on the second day, Martinez advised the Court the issue had been addressed. *See id.* at 64, 79-80. As trial progressed, Martinez understood Tai had occasional difficulty hearing the testimony. *See id.* at 84. Specifically, Martinez testified that during trial, Tai would occasionally tap him on the shoulder and ask a question about what a witness had said. *Id.* at 65. For example, Tai might ask whether a witness said an interview had occurred in Orlando, and Martinez might respond that the witness had said Tampa. *See id.* Each time Tai raised a specific question about a witness's testimony—which Martinez estimated happened six to twelve times during the course of trial—Martinez would answer the question. *See id.* at 65, 78. Martinez denied that he ever dissuaded Tai from asking such questions, noting Tai's questions were infrequent enough to address as they arose.[9] *See id.* at 81-82. On one occasion, when Tai told Martinez he could not hear a soft-spoken witness, Martinez asked the Court to direct the witness to speak up. *Id.* at 77. According to Martinez, all of the hearing-related issues Tai communicated to him were addressed—by Martinez, a witness, or the Court. *See id.* at 78. Martinez denied ever telling Tai that the Court would be angry if Martinez raised an issue regarding Tai's ability to hear, or that he should not worry about being able to hear because Martinez would summarize the testimony for him at the end of the day, as Tai claimed in the affidavit in support of his § 2255 motion. *See id.* at 80-82. Although Tai's defense team, including Martinez, Tai, Pearson, and Ms. Martinez, would convene at their hotel each night during trial to discuss the day's proceedings, according

[9] Indeed, Martinez explained that had he been constantly answering these kinds of questions from Tai, he would have discussed the situation with Tai or brought it to the Court's attention. *See* Hr'g Tr. 81-82, Apr. 26, 2017.

to both Martinez and Ms. Martinez, neither Tai nor Pearson ever reported that Tai was not hearing the testimony at trial during these meetings.[10] *See id.* at 83-84, 90.

Having presided over the trial in this case, as well as the evidentiary hearing on Tai's § 2255 motion, and having had an opportunity to observe the witnesses and their demeanor in addition to hearing their testimony, the Court does not find Tai's testimony regarding the extent of his hearing difficulties after the first day of trial, his efforts to bring his hearing difficulties to Martinez's attention, and Martinez's response credible. As to the extent of his hearing difficulties, while testifying in his own defense at trial, Tai demonstrated the ability to hear and respond to the questions posed on both direct and cross examination and to request clarification in the few instances when he did not hear or understand a question. While Tai now maintains he was able to understand the lawyers' questions only when they examined him at close range from the podium, he was able to respond to the Government's questioning, which was conducted at least in part from counsel table.[11] Moreover, Tai's statement that he "could not understand anything" when seated at the counsel table is contradicted by Martinez's account of the types of

[10] Martinez did not indicate he had any difficulty communicating with Tai during these nightly meetings. And although Martinez agreed with Dr. Colon's observation that Tai's hearing aids did not completely correct his hearing problem, *see* Hr'g Tr. 72-73, Apr. 26, 2017, he did not believe that Tai had difficulty hearing him during his representation of Tai, *see id.* at 61.

[11] At the evidentiary hearing, Tai recalled that both Martinez and the Government questioned him from the podium, *see* Hr'g Tr. 24-25, Apr. 26, 2017, though he also acknowledged the Government's examination was not conducted entirely from the podium, *see id.* at 27 (stating, as to his ability to understand the Government's questions, "If you were close, then I would understand you, but when you would walk away from me, then I would not understand you"). According to FBI Special Agent Pacchioli, who was also present during trial, the Government cross-examined Tai primarily from counsel table. *Id.* at 95-96. The Court credits Pacchioli's testimony that the Government conducted its cross-examination of Tai at least in part from counsel table. Insofar as Tai now suggests he did not understand the Government's questions, *see id.* at 27 ("I heard sometimes, a little, but I said, I did not understand everything."), this contention is refuted by his ability to testify without any apparent difficulty on cross examination.

questions Tai asked him during trial, which the Court finds credible. Martinez explained that on six to twelve occasions, Tai would ask him a question about an aspect of a witness's testimony that Tai had not heard—e.g., a location or time the witness mentioned. *See id.* at 65, 81; *see also id.* at 84 (characterizing Tai's questions as asking Martinez to "fill in the blanks with something in a sentence that [Tai] didn't hear"). The nature of these questions belies Tai's claim that he could not understand anything from counsel table.[12]

On the separate question of the extent to which Tai made any ongoing hearing difficulty known to Martinez and Martinez's response to such disclosure, the Court finds Martinez's testimony credible. During trial, Martinez displayed no hesitation in raising issues regarding Tai's ability to hear with the Court. Martinez not only advised the Court of the difficulties Tai was having with his hearing aids on the first day of trial, but when Tai proposed that he take ten minutes to try to fix the problem, counsel continued to advocate for a recess to enable Tai to "go into a shop" to get the problem fixed. *See* Trial Tr. 45-46, Sept. 10, 2012. Martinez also did not hesitate to request that the Court direct a witness to speak into the microphone on another occasion when Tai could not hear. *See* Trial Tr. 74, Sept. 13, 2012. And Martinez was attentive to Tai's hearing difficulties in connection with Tai's own trial testimony, ensuring that Tai knew to advise counsel if he did not hear or understand a question on direct or cross examination. *See id.* at 146. Given the affirmative steps Martinez took during trial to ensure Tai could hear the proceedings, the Court finds Martinez's denials that he ever discouraged Tai from asking

[12] Notably, Tai did not raise any issue regarding his alleged inability to hear during trial on direct appeal, although he was represented by new counsel on appeal.

questions, told Tai the Court would be angry if he raised an issue regarding Tai's ability to hear, or told Tai not to worry about being able to hear entirely credible.[13]

**DISCUSSION**

Section 2255 permits a prisoner in custody under a federal sentence to move the sentencing court "to vacate, set aside or correct the sentence" on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Here, Tai raises a single claim of ineffective assistance of counsel based on trial counsel's failure to ensure that Tai's right to understand, participate in, and assist in his defense during trial was not compromised as a result of his hearing impairment. To prevail on a claim of ineffective assistance of counsel, a movant must show (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show counsel's performance was deficient, the movant must demonstrate "that counsel's representation fell below an objective standard of reasonableness," when measured under "prevailing professional norms." *Id.* at 688. In evaluating counsel's performance, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. To establish prejudice under the *Strickland* test, the movant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the

[13] Tai argues his account of Martinez's response when he allegedly told Martinez he could not hear is consistent with Martinez's testimony that his general practice is to tell clients it is impossible for him to be having a conversation with the client and listening to a witness's testimony at the same time and to provide clients with a legal pad on which to record any issues the client wants to discuss with him. *See* Hr'g Tr. 65-66, Apr. 26, 2017. The Court disagrees. While Martinez stated he followed this general practice with Tai, it is clear from Martinez's testimony that he did not regard Tai's questions about what a witness had said as something that had to wait for a break.

result of the proceeding would have been different." *Id.* at 694. A reasonable probability in this context means "a probability sufficient to undermine confidence in the outcome." *Id.* Tai argues, and the Government does not dispute, that in this case, the prejudice inquiry focuses on whether there is a reasonable probability that, had counsel raised the issue of Tai's inability to hear at trial, the Court would have found that, absent further accommodations, Tai's hearing impairment infringed upon his constitutional right to understand the proceedings against him, consult with counsel, and participate in his defense.

Although the Third Circuit Court of Appeals has not addressed the issue, the Court of Appeals for the Second Circuit has held that "the Sixth Amendment right to participate in one's own trial encompasses the right to reasonable accommodations for impairments to that participation, including hearing impairments." *United States v. Crandall*, 748 F.3d 476, 481 (2d Cir. 2014).[14] This right to hearing-related accommodations is limited, however, "to those reasonable accommodations that are requested by the defendant before or during trial, or the need for which is, or should reasonably be, clear or obvious to the district judge." *Id.* In *Crandall*, the Second Circuit found no Sixth Amendment violation where the defendant did not notify the district court of his alleged continuous inability to hear the court proceedings, and where the district court accommodated the hearing-related difficulties of which it had notice—

[14] In support of this holding, the Second Circuit cited its earlier decision in *United States ex rel. Negron v. New York*, in which the court held the lack of adequate translation for a Spanish-speaking defendant of those portions of his trial conducted in English violated the defendant's rights to be present at his own trial and to "possess 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.'" 434 F.2d 386, 389 (2d Cir. 1970) (quoting *Dusky v. United States*, 362 U.S. 402 (1962) (per curiam)). Although the Third Circuit has not addressed the right to hearing-related accommodations, the Court of Appeals has acknowledged that access to translation services may be necessary for a non-English-speaking defendant to fully exercise his confrontation rights. *See Gonzalez v. Virgin Islands*, 109 F.2d 215, 217 (3d Cir. 1940).

namely, that the defendant "had *some* difficulty hearing at times"—by instructing witnesses to speak louder, having the defendant move closer to the bench, and instructing defense counsel to notify the court if the defendant was having difficulty. *See id.* at 482-84.

Unlike in *Crandall*, in which Second Circuit considered whether the defendant's Sixth Amendment rights were violated as a result of the trial court's failure to provide reasonable accommodations for his hearing impairment, Tai argues his trial counsel was ineffective for failing to advise the Court of his ongoing inability to hear the trial proceedings and to request appropriate accommodations. The Court must therefore determine whether trial counsel acted reasonably in light of what he knew or should have perceived about Tai's ability to hear the trial proceedings. *Cf. Jermyn v. Horn*, 266 F.3d 257, 300 (3d Cir. 2001) (holding whether defense counsel was ineffective for failing to request a competency hearing turned on whether there were "indicia of incompetence that would provide reasonable counsel 'reason to doubt' the defendant's ability to understand the proceedings, communicate with counsel, and assist in his own defense" and thus required examination of "what counsel did, and what facts counsel knew that would bear on the issue of [the defendant's] competency to stand trial").

As noted, it is undisputed that Martinez knew Tai was having difficulty hearing on the first day of trial because of a problem with his hearing aids. Trial Tr. 44, Sept. 10, 2012. Tai faults Martinez for failing to advise the Court, when trial resumed on the second day, that Tai had been unable to have his hearing aids repaired or replaced and to request a colloquy regarding Tai's ongoing ability to understand the proceedings. But by the time trial resumed, Martinez understood that Tai's hearing aids had been repaired, as Pearson, who had accompanied Tai to Jefferson, informed him that the problem was the battery, which had been replaced. Given Martinez's familiarity with the close personal relationship between Pearson and Tai, it was

reasonable for Martinez to rely on the information provided by Pearson, which was corroborated by the fact that Tai's hearing aids had stopped beeping. Both Tai and Martinez recalled, moreover, that before trial resumed, Martinez advised the Court (without objection by Tai) that the problem with Tai's hearing aids had been resolved. In these circumstances, where Martinez had no reason to doubt that Tai's hearing aids had been repaired, counsel was not ineffective for failing to request a colloquy with the court.

As to Tai's argument that counsel was ineffective for failing to notify the Court of his ongoing inability to hear the proceedings as trial progressed and to request appropriate accommodations, the record does not support Tai's assertion that Martinez was on notice that he could not hear substantial portions of the proceedings. When called as a witness in his own defense, Tai testified without incident, providing responsive answers to questions posed by Martinez as well as the Government. Martinez was aware during trial that Tai had occasional difficulty hearing discrete portions of the witnesses' testimony because, in those instances, Tai tapped him on the shoulder and asked him about the specific portion of the testimony he could not hear. As Martinez explained, however, it is not unusual for a client (or even for Martinez himself) to miss a word or phrase during testimony, *see* Hr'g Tr. 78, Apr. 26, 2017, and Martinez believed he was able to adequately respond to Tai's questions about the missed testimony as they occurred. Beyond asking specific questions about testimony he had missed, and in one instance telling Martinez he could not hear a witness, Tai never indicated he was unable to hear large portions of proceedings. And given Tai's practice of alerting Martinez when he could not hear, Martinez had no reason to believe Tai's difficulty hearing extended beyond what he brought to Martinez's attention. *Cf. Strickland*, 466 U.S. at 691 (noting counsel's actions "are usually based, quite properly, . . . on information supplied by the defendant"); *Banda v. United States*,

No. CV 113-080, 2014 WL 3363033, at *7 (S.D. Ga. July 9, 2014) ("An attorney can only be reasonably expected to act on information provided by his client.").

Tai argues Martinez should have known Tai was having difficulty understanding the proceedings because he did not make substantive comments on witness testimony during breaks in the trial. While Martinez did not recall Tai raising any issues with him during the trial day, before the nightly defense team meeting, *see id.* at 66, he did not suggest Tai's behavior was unusual in this regard. On the contrary, Martinez noted that clients varied widely in terms of having issues they wanted to discuss with counsel. *See id.* (noting some clients will make notes "non-stop" about issues they want to raise with counsel, while others "won't write at all").

Throughout the trial in this case, when Tai alerted Martinez that he was having trouble hearing, Martinez addressed the problem, either by requesting an accommodation from the Court or by relaying to Tai the bits of testimony he had missed. Because, after the first day of trial, Tai did not notify Martinez that he was having any more than episodic difficulties hearing, and because Martinez did not have reason to believe Tai could not hear the proceedings, the Court finds Martinez was not ineffective for failing to request additional accommodations. *See Patton v. Stephens*, No. 13-2333, 2014 WL 6809175, at *6 (N.D. Tex. Dec. 3, 2014) (rejecting habeas petitioner's claim that his counsel was ineffective for failing to provide the petitioner hearing aids or other interpretive assistance at the pre-trial, plea, and sentencing phases where "although [p]etitioner advised his counsel that he 'had a hard time hearing people sometimes,'" he "never advised either his counsel or the court that he could not understand what was said during the plea colloquy, presentence investigation, or sentencing hearing"); *cf. Banda*, 2014 WL 3363033, at *7 (rejecting § 2255 movant's claim that his counsel was ineffective for failing to alert the trial court to movant's hearing impairment and hire an interpreter where petitioner did not claim he

had ever told defense counsel, his Spanish language interpreter, or the court "that he was hard of hearing or that such an infirmity prevented him from understanding or communicating with [defense counsel] or the interpreter").

Because Tai has not shown Martinez's performance at trial was deficient, the Court need not address the prejudice prong of the *Strickland* test, *see Strickland*, 466 U.S. at 697, and Tai's § 2255 motion will be denied. Moreover, because Tai has not made a substantial showing of the denial of his constitutional rights, a certificate of appealability will not issue.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.